UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DONALD F. KING, Trustee,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>MARY ELLA JOHNSON, *et al.*,<br><br>*Defendants-Appellants.* | Case No. 1:22-cv-01037 (MSN/LRV) |

## MEMORANDUM ORDER AND OPINION

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia's order granting summary judgment in a bankruptcy action. Having reviewed the record and the parties' briefing, the Court will affirm the bankruptcy court's decision for reasons that follow.

**I.     BACKGROUND**

Legacy Wealth, LLC is a Virginia limited liability company formed in 2015. *See* Dkt No. 5-1 at 561–62 ("Appx.").[1] Jerome and Michele Johnson (the "Debtors") each shared ownership interests in Legacy Wealth with their two adult children, Gabrielle and Emeri (the "Appellants"; together with the Debtors, the "Johnson Family"). *Id.* at 170. Jerome and Michele owned 52% and 24% of Legacy's membership interests. *Id.* at 562. Gabrielle and Emeri each owned 12%. *Id*. Jerome Johnson served as both Legacy's Registered Agent and its Managing Member. *Id.* at 160. Legacy Wealth's sole asset was a home located at 8815 Colemans Lake Road, Ford, Virginia 23850 (the "Property"). *Id.* at 562.

---

[1]     Because it is slightly more inclusive, the Court will refer to Appellee's appendix throughout this Order.

1

In October 2016, the Johnson Family executed a Consent to Action by Members Without a Meeting on behalf of Legacy Wealth (the "2016 Consent"). *Id.* at 562. The 2016 Consent stated that:

> By signing this document, the undersigned, who are all the members of Legacy Wealth Properties, LLC, a limited liability company (the "Company"), consent to the taking on the following action without a meeting in accordance with the terms of the Operating Agreement of the Company:
>
> RESOLVED, that due to financial hardships and the inability to pay Mary Ella Johnson for [the Property] as agreed upon at the time of the formation of Legacy Wealth Properties, 100% (one hundred percent) of the property is signed back over to Mary Ella Johnson. All four Members relinquish any and all rights to the said property to Mary Ella Johnson.

Appx. at 535 (emphasis removed).

However, at the time of the 2016 Consent, no other document was executed and no formal deed recorded. *Id.* at 562. Both parties agree the 2016 Consent also lacked any monetary consideration (though Appellants argue now that the need to stop payments because of financial hardship constituted valuable consideration on behalf of Legacy Wealth). *See* Dkt. No. 4 at 24.

Three years later, in July 2019, the Debtors jointly filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Appx. at 563. Appellee was then appointed as the trustee for the Debtors' bankruptcy estate. *Id*. In March 2021, Appellee (acting as trustee) proposed a plan to dissolve Legacy Wealth, sell the Property, and divert the proceeds toward paying off Debtors' outstanding debt. Appx. at 563–64. And, in July 2021, Appellee initiated an adversary proceeding in the bankruptcy court to recover the Property. *Id.* at 564. Days later, Debtor Jerome Johnson again attempted to transfer the Property from Legacy Wealth to Mary Ella Johnson—this time, through a gift deed for the nominal consideration of $1.00 (the "2021 Gift Deeds"). *Id.*

During the adversary proceedings, Appellee argued that, as trustee of Debtors' bankruptcy estate, he assumed the Debtors' combined 76% membership interests in Legacy Wealth when they filed their bankruptcy petition; and, because the company's Operating Agreement required only

2

52% of the membership to approve a decision to dissolve, he could unilaterally initiate the winding up of Legacy Wealth. Appx. 288–93. Over the Johnsons' objections, Bankruptcy Judge Kenney approved Appellee's plan and ordered Legacy Wealth to be wound up and dissolved. Appx. at 570–571.[2]

The issues before the Court on appeal are: (1) whether the Debtor's non-economic rights to manage Legacy Wealth became a part of their bankruptcy estate such that Appellee, as trustee of that estate, could step into the Debtors' shoes and wind up the company; (2) whether, notwithstanding Appellee's authority to manage Legacy Wealth, the Property was validly transferred through either the 2016 Consent or the 2021 Gift Deeds.

## II.   STANDARD OF REVIEW

On appeal from an order granting summary judgment, the Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Terry v. Meredith (In re Meredith)*, 527 F.3d 372, 375 (4th Cir. 2008) (citations omitted). Thus—because Appellants do not dispute the underlying facts and challenge only the legal conclusions reached below, *see* Appx. at 591—the Court reviews the bankruptcy court's order *de novo*.

## III.   DISCUSSION

Appellants contend that the bankruptcy court erred in three ways. *First*, Appellants assert that the bankruptcy court erred as a matter of law in determining the scope of the Trustee's control of the Debtors' membership interests. *Id.* at 8. To that end, Appellants assert that Appellee had only the rights of an assignee of the Debtors' membership interests, which would not allow the Trustee to initiate the winding up process. *Id.* at 13. *Second*, Appellants argue that the 2016 Consent legitimately transferred Debtors' membership interests to Appellant Mary Ella Johnson.

---

[2]   Given the pendency of this appeal, Legacy Wealth has not yet been wound up.

Appellants' Br. at 22. *Third*, Appellants argue that the July 2021 Gift Deeds were effective. *Id.* at 23. For the reasons stated below, the Court rejects each of Appellants' contentions and will affirm the bankruptcy court's decision in full.

### A. The Scope of the Bankruptcy Estate

In his opinion granting summary judgment, Judge Kenney concluded that Appellee, as the trustee of their bankruptcy estate, assumed all the Debtors' interests in Legacy Wealth LLC—both economic and non-economic. Appx. at 570–71. This Court agrees.

As the bankruptcy court recognized, Virginia law and the federal Bankruptcy Code conflict on how membership rights in a limited liability company are affected by a voluntary bankruptcy filing. Under Virginia law, members of a limited liability company are dissociated upon the filing of a bankruptcy petition; and, upon dissociation, the member loses all non-economic rights (*i.e.*, the rights related to managing the company), but keeps their economic rights (*i.e.*, the rights to share in the profits, losses, and distributions of the company). Va. Code Ann. §§ 13.1-1040.1(6)(a), 13.1-1040.2(A). Under federal bankruptcy law, however, upon filing a petition for bankruptcy, all of a debtor's interests in a limited liability company become the property of the bankruptcy estate and are therefore subject to the control of the trustee of that estate. 11 U.S.C. § 541(c)(1). The Bankruptcy Code is also clear that it preempts any "non[-]bankruptcy law" that may provide otherwise. *Id*. As such, to determine whether to apply state or federal law in this case, the bankruptcy court was first required to decide whether § 13.1-1040 is a "non[-]bankruptcy law" that conflicted with the Bankruptcy Code. After a review of the applicable law, this Court agrees with Judge Kenney that it is.

Just as Judge Kenney concluded, this Court finds that Va. Code Ann. § 13.1-1040.1(6)(a) is a "non-bankruptcy law" that affects a forfeiture, modification, or termination of a debtor-

member's non-economic interest in a limited liability company both by converting the debtor-member to an assignee and by stripping them of everything but their economic rights merely because the debtor-member filed bankruptcy. *See In re Virginia Broadband, LLC*, 498 B.R. 90, 95 (Bankr. W.D. Va. 2013).³ Thus, pursuant to § 501(c)(1), the state law is preempted and the federal standard applies.

All of the Debtors' membership rights—both economic and non-economic—became the property of the bankruptcy estate and Appellee (as the trustee of that estate) was free to exercise those rights as he saw fit.

B.   **Appellants' Counterarguments**

Fighting that conclusion, Appellants make several arguments to the contrary. None are persuasive. *First*, Appellants argue that, under *Butner v. United States*, 440 U.S. 48 (1979), Virginia law should be applied. Dkt. No. 4 at 14–16. However, the Court made clear in that case that state law was to apply "[u]nless some federal interest requires a different result." *Butner*, 440 U.S. at 55. Here, as Judge Kenney suggested, there is a federal interest in allowing the trustee to broadly assume the Debtors' rights as not to deprive creditors of a meaningful opportunity to be made whole. *See* Appx. at 572.

---

³   Just as Judge Kenney recognized in his opinion, this Court recognizes that other judges to be faced with this question have reached a different conclusion. However, the Court finds that the rationales used in those cases were either lacking or unpersuasive.

For example, in *Garrison-Ashburn* (on which Appellants principally rely), Bankruptcy Judge Mayer agreed that "all the rights and privileges [the debtor] had immediately prior to filing became property of the bankruptcy estate." 253 B.R. 700, 708 (Bankr. E.D. Va 2000) (emphasis added) (concluding that "[the debtor's] interests in [the company], both his membership interest and his non-economic rights and privileges as a member, became property of the bankruptcy estate"). However, without explanation, Judge Mayer nonetheless concluded that, by stepping into the debtors' shoes, the trustee also assumed the "duties and obligations" that attached *after* the debtor filed for bankruptcy and was dissociated from the limited liability company at issue, *i.e.*, the inability to exercise non-economic rights. *Id.* at 709 ("[T]he estate received the entire interest of the debtor . . . including its burdens and restrictions. The economic interest, that is the membership interest, remains in the estate and is available for the benefit of creditors."). This Court sees no way to reconcile that conclusion.

*Second*, Appellants argue that, even if the trustee could step in and wind up the company, the Property had already been transferred through the 2016 Consent. Dkt. No. 4 at 26–27. However, as Judge Kenney noted, that instrument did not effectuate an immediate transfer of the Property from Legacy Wealth to Mary Ella Johnson. Instead, it memorialized the members' "consent to the taking of the following action [*i.e.*, transferring the Property to Mary Ella Johnson] without a meeting of the members." Appx. at 535. No formal deed was prepared to effectuate that transfer until 2021—more than a year after the Debtors' filed for bankruptcy. *Id.* at 562. Thus, at best, the 2016 Consent was an authorization to one day transfer title, but because that transfer was never completed, the company retained possession of the Property. *Cf. Lim v. Choi*, 501 S.E.2d 141, 144 (Va. 1998) (finding that an instrument should not be construed as a deed under Virginia law because it lacked "apt words of conveyance" evidencing a present intent to immediately convey the property at issue).[4]

And *third*, Appellants argue that, if not transferred in 2016, the Property was transferred through the 2021 Gift Deeds. Dkt. No. 4 at 27–28. Once again, the Court disagrees. The attempt to effectuate the transfer of the Property to Mary Ella Johnson through the 2021 Gift Deeds came a year after Debtors filed for bankruptcy and six days after the Trustee filed an Adversary Proceeding in the bankruptcy court to recover the Property. However, because the Debtors had already petitioned for bankruptcy, their interests in Legacy Wealth (including their right to manage the company, *see supra* pp. 4–5) were the property of the bankruptcy estate and under the control of the Trustee. And—because, at the time he attempted to ratify the 2021 Gift Deeds, Debtor Jerome Johnson had no interest in Legacy Wealth and because, under Virginia law, actions taken

---

[4] Appellants also challenge Judge Kenney's alternative conclusion that, even if the Property was validly transferred, that transfer was voidable as a fraudulent conveyance. Dkt. No. 4 at 22–23. However, because the Court agrees that the Property was never transferred, it need not address the challenges to the bankruptcy court's secondary holding.

without proper authority are "null and void,"—the 2021 Gift Deeds were "without legal effect" as they "exceeded the scope of authority conferred by the operating agreement." *In re Kang*, 664 F. App'x 336, 340 (4th Cir. 2016).

*   *   *

Accordingly, it is hereby

**ORDERED** that Appellants' appeal is **DENIED** and the Bankruptcy Court's order granting summary judgment to Appellee is **AFFIRMED**.

The Clerk is directed to close this action.

**SO ORDERED.**

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
August 9, 2023